We'll call our last case of this afternoon, number 17-2444 Luziga v. Atty Gen. Ms. Anderson, appearing with Mr. Archer, and Ms. Khoury. I apologize, I said Ms. My fault. I've screwed up enough names today already. Mr. Anderson, take your time setting up, no problem. Whenever you're ready, counsel. Good afternoon, may it please the court? Can I reserve up to three minutes for rebuttal? Sure can. My name is Khoury Anderson, and I, with Joseph Archie and Christopher Merle, we are appointed counsel for Mr. A.J. Luziga, petitioner. We ask this court to grant the petition and remand this matter back to the BIA to correct the immigration judge's two legal errors. First, the immigration judge ignored the board's precedent in the finding that Luziga had been convicted of a particularly serious crime without first analyzing the elements of that offense. And second. What makes you think that the elements at this stage have to be analyzed first before you get to the facts? Yes, Your Honor. The board in matter of NAM in 2007 and this court in 2010 and Dennis v. Attorney General actually approved of the two-step inquiry that the board outlined in NAM. According to the board, if the elements of a crime do not potentially qualify a crime as particularly serious, then an immigration judge cannot consider the specific facts and circumstances of a petitioner's conviction. But on the other hand, if the immigration judge does determine that these facts, that the elements of the offense do bring the crime based on the elements alone within the nature or the category of being particularly serious, then and only then can an immigration judge consider the specific facts and circumstances under. Where in the Dennis case did our court analyze the elements of the crime, which I think was evidence tampering? Yes, Your Honor. Returning to the facts. Your Honor, in Dennis, the court enunciates the rule and then says that the court, the court did not engage, the court itself did not engage in the analysis of the elements of the conviction, but the court approved of the manner and the process by which the immigration judge did. And thus, the court jumped to the second step of the inquiry, which was the specific facts and circumstances of Dennis's conviction. But here, well, notwithstanding the fact that there was no such analysis done, would harmless error play a role in our analysis here? No, Your Honor, for several reasons. First, in the spirit of NAM, and we assume Dennis as well, but in NAM, the board says that both parties in the immigration proceeding should have the opportunity to explain and introduce evidence as to why a crime is particularly serious or not. Now, Luziga did have an opportunity to argue why the facts of this crime were not particularly serious, but the immigration judge, and we agree, rightly said that her procedural posture is not to relitigate the case. However, Luziga never had an opportunity to explain and introduce evidence as to why the elements of 1349, Conspiracy to Commit Water Fraud, which was his crime of which he pled guilty to, he actually never had a chance to present evidence as to why that, based on the elements of that crime, there is no particularly, that is not within the crimes that could be particularly serious. Now, the IJ may not have analyzed, if you're correct, there needs to be this two-step process. If that's, in effect, what Dennis requires, and I know that there's an issue before our current and bank court in Pistardo Vale, we'll see what happens there. But the IJ may not have analyzed the elements separate from the facts of crime here, but the BIA did. Why can't we just affirm on that basis? Your Honor, the board actually did not correct the immigration judge's legal error. In fact, the board actually took it a step further and analyzed the wrong elements by reading into the statute a loss requirement. So the board, in their analysis of the nature of Luziga's convictions, they said that Luziga was convicted of a participation in a scheme to defraud victims of nearly $1 million. So there's several. But let's look at this case, and we can't talk about the abstract. If the BIA had examined the elements, isn't it likely that they would have come to the conclusion that these offenses were particularly serious crimes? Your Honor, we don't take, at this procedural posture, we don't take a position on that because the statute grants the attorney general the discretion to make those determinations. But under the board's case law, there is a process that they're supposed to go through when making those determinations. Let me ask the follow-up to that question, which is basically let's just look at the consequences of this. Even if you were to win, wouldn't any victory be pyrrhic? In other words, let's say you were to win on process. It should go back because the I.J. didn't. There should have been a two-step process, and the I.J. didn't engage in the first step. Do you have any question that this particular crime is going to be deemed to be particularly serious? Yes, Your Honor. The Luziga on remand back to the immigration judge could present evidence showing that conspiracy can be committed in a number of non-serious ways. And if the immigration judge actually accepts his argument, then the immigration judge would have never reached the specific facts and circumstances contained in his plea agreement, as well as the pre-sentencing report. And one of the errors that the immigration judge did was that she specifically found the pre-sentencing report to be quite dispositive in her decision-making, which would be appropriate if she had analyzed that first step of the NAM and Dennis inquiry and independently determined that the elements of conspiracy to commit wire fraud do bring that crime within a category of being particularly serious. So if I understand you correctly, you're arguing that the I.J. could go back, take a look at this particular crime, take a look at the two elements and say it's not – those two elements do not make a particularly serious crime hard stop. Your Honor, the immigration judge is out to conclude within her discretion. No, she could. She could. That's why it's not harmless error. She could, but at the same time, she cannot. So if she analyzes elements of 1349, which, again, are attempt or conspiracy to commit wire fraud, there is no loss requirement and there certainly is no substantial loss requirement as the BIA enunciated. And further, under the jury instructions in this jurisdiction, there is no express overt act requirement. So the immigration judge could put all that together and decide, you know what, the conspiracy to commit wire fraud, 1349 in and of itself, is not particularly serious. And thus, Luziga would have an opportunity to present evidence for withholding of removal, which is a more substantial relief than deferral of removal under the Convention Against Torture. And the board and immigration judge's reliance to go straight on the fact was on an incorrect reading of this court's decision in Kaplan v. Attorney General. In Kaplan, the court was deciding whether the immigration judge erred in finding that a significant amount of security fraud conviction constituted both an aggregated felony as well as a particularly serious crime. But it's important to note that Kaplan predates Dennis, as well as NAM. So there is no independent analysis of whether the elements of security fraud conviction bring that crime within the ambit of being particularly serious. And secondly, there is the discussion of the loss amount in Kaplan, which was seemingly dispositive for both the board as well as the immigration judge here. That discussion regarding the loss amount in Kaplan was based in the court's aggregated felony analysis, not in the court's particularly serious. Let's just go back to you went on process. It goes back. What would be your argument if you got into the elements and how the elements fit with the facts here? I think the best argument we would make that there is no loss requirement. So I think another strong argument would be that there is no express overt act requirement. Again, within the jurisdiction. So one could conspire to commit a fraud offense without actually doing anything or actually acting on this particular offense. And then we would also ask the immigration judge to look to cases. What are the elements of this particular fraud conspiracy? Well, that's that's that's the tough question, because he was actually convicted of 1349, which is merely conspiracy or an attempt or conspires to commit any offense under the U.S. is called Fraud Chapter. But he did not plead guilty in the charges for substantive wire fraud were dismissed. So on on the remand, if the immigration judge attempted to shift the argument to that point, that under a lock of that would be impermissible because he only pled guilty and was only convicted of conspiracy to commit wire fraud. And the elements there restricted to the existence of the conspiracy and his membership in the conspiracy. Right. Yes. Yes. And we would ask a further on remand. We would ask the court, the immigration judge to consider to go to follow other cases in which the board immigration appeals did independently look at the elements of a crime of conviction. For example, in matter of R.A.M. in 2012, the conviction was was child pornography. And the court didn't even reach the specific facts and circumstances actually agree. The court found that the that was a particularly serious crime because child pornography, independent of the specific facts of a petitioner's case, was something that could be that wasn't intrinsically serious offense. And in fact, he that petitioner and R.A.M. on applicant rather R.A.M. only played only was guilty of possession of child pornography. But the court said because the the court did not have to determine the facts, that even though the facts were not that serious, the crime in and of itself, based on the elements of being child porn. What about the second issue? The second issue. So your honor. So for two decades, this court has required that immigration judges and the board of immigration appeals give applicants an opportunity to supply corroboration evidence, corroborating evidence, or or explain its unavailability before that, before denying a claim due to lack of cooperation. And this comes this principle was introduced in Abdullahi v. Ashcroft. And it's been carried through as recently last year in Saravia, which extended the Abdullahi rule until the deferral removal context, which is the fact that we apply that retroactively in this case. Yes, your honor. And it's because there's also there's an argument. The summary of all it really did was take Chukwa, which followed up on Abdullahi and just. Clarified or reinstated or restated and not reinstated, but restated. Yes, your honor. In fact, Saravia reminds us that Abdullahi and the cooperation principle is not merely an inquiry into why an applicant submitted certain evidence or not. It's it's an inquiry into whether evidence corroborating an applicant's testimony is even available. So if we were manned to give you a chance to corroborate those claims about torture in Tanzania. What kind of new evidence would you offer? We've had them brief that issue. So we would have to meet with the client and see which evidence is available. Sort of a question of the same nature. It wasn't the wasn't the IJ's cat deferral decision really based on the fact that even if your client had cooperated, his claim, he wasn't able to carry the burden. No, your honor. Our reading of her decision is that she says that his testimony, as well as the testimony of his two supporting witnesses, were not enough to reach the to reach the burden. His burden of proof under the deferral of removal analysis. But again, under Abdullahi and the relevant BIA precedent, if the if the judge finds a petitioner. No, no. If an immigration judge finds a petitioner to be credible, as she did here, then she should not have to. The immigration petitioner is not under an obligation to present corroborating evidence. But nevertheless, the immigration judge did deny the claim because there is nothing to corroborate the testimony of Luziga. But on remand, he he does. He should have the opportunity to submit documentary evidence or whatever evidence the immigration judge is looking for to supplement the testimony that he makes in his own claim. Thank you. I look forward to being back. Thank you. May it please the court, Jennifer Corey, on behalf of the attorney general. Excuse me. We have some water. Thank you. Thank you. You're welcome. The government here is not arguing that there's not a first step in this in this test for particularly serious crimes in the circuit. We're arguing that the board applied the second. In fact, that the agency applied the first step here under Kaplan. So you can see an IJ did not. No, no, I don't concede that. Well, the IJ applied Kaplan, and I think that Kaplan actually covers the first prong of this test. Does Kaplan really stand for the proposition that financial crimes can be but don't necessarily have to be serious crimes? Correct. And the threshold of this test, the test, the first prong of this test is that you need to look at whether a crime potentially fits within the ambit of a particularly serious crime. So if a crime can be as Kaplan held, like nonviolent, sorry, nonviolent financial crimes can be particularly serious crimes, then that Kaplan covers that. This first prong that in that case, securities fraud was a particularly serious crime. Kaplan also said that other financial crimes can be particularly serious crimes. And here we're dealing with conspiracy to commit wire fraud. And all we're saying is that that first prong under Kaplan was covered, that it showed that it could be a potentially serious crime. And then you go to the facts, is what you're saying? And then you go to the facts. But the problem with the IJ here is that the IJ went straight to the facts, right? No, well, the IJ applied Kaplan in any case. Every time somebody says Kaplan, I keep thinking there's a problem with Kaplan. It's the author. I wrote it. I don't agree. If I understand your opponent's argument, there was never analysis done of the specific elements tethered to this individual's conviction, correct? Well, that's his argument. Was there such an analysis done of the elements of the conspiracy to commit wire fraud? There was. I mean, I'll first argue that there doesn't really need to be. Again, this is a very low threshold that we're trying to meet under this first step. And because this court does have a precedent of Kaplan, and that covers elements of the crime in this case, I don't think that we need to be getting into the particular elements here. But I will say that the board did. Isn't part of the maybe we have a timing issue? Shouldn't we wait to see what the in-bank court does in Bristardo Vale before we engage with this issue or finish engaging with this issue? I. I don't think that that has anything really that that that changes our position in this case or changes the posture of this case. I think in both cases where we're not saying that there's not a threshold test here and that the threshold was conducted and that I believe. I'm sorry. I'm not too familiar, but I believe that that had to do with non-aggravated felonies. Correct. The other case, you mean Bristardo Vale? Yes. Bristardo Vale is. Does particularly serious crime include only aggravated felonies or can it include something else? OK, well, I'm sorry, Your Honor, to be not prepared to. I did not listen to the argument in that case. And you saw there was something filed today. The 28 day letter. I did see that. And I did read it. But I saw it only to only to establish that the government in that case argued that there is a step one, which we will argue in this case as well. And I don't think that we're we're deviating at all from our arguments in either. But if the court would like me to supplementally brief something. I mean, at this point, my question was really, should we wait to see what the lay of the land is after the in-bank court rules? And I'll leave that up to the court. Why don't we turn to the corroboration issue? It appears that the IJ that found that Luziga was more so doubt he found he was credible and that Luziga testified he would be tortured with the acquiescence of the Tanzanian government. So if the answer is yes to both questions, then doesn't that case fit the rule that requires notice of the need for corroboration? I think there's really a two two prongs. One, you need to corroborate whatever it is, X, Y and Z. And two, I'm going to give you the opportunity. If you can to corroborate X, Y and Z. I don't see that happening here. All the first remind the court that that was not exhausted before the board. And that's a court that could that's a issue that could have been addressed by the board. And it's an issue that could have been redressed. What makes you think it wasn't exhausted? The corrupt that the IJ didn't correctly. Where do you say it wasn't? I thought it was. Didn't they raise it before the before the BIA? They did not raise it. They rate the what they argued before the BIA is that the IJ erroneously found there to be no lack of corroboration. Not that there was a procedural defect that the IJ did not give the correct notice and opportunity. So the board, I mean, it was on no notice to to address that argument. But in any case, isn't that isn't that sufficient? Isn't the fact that they argued that the IJ was wrong, that there was no corroboration? Doesn't that doesn't that clearly include the fact that the IJ didn't even give them a notice? I would argue those are those are two completely different arguments. One is a kind of overall burden of proof argument. And one of them is saying procedurally, the IJ erred. And I don't think that the board would be on notice to address that and possibly remand down to the immigration judge. If all you argue before the board is the IJ just got it wrong on corroboration, not that they didn't provide us the right process on corroboration. In any case, I think that what we're dealing with here is more the IJ did in her in her decision, did a few times over say that there was a lack of corroboration on a few items in Mr. posited as probable problematic relationships. Even accepting those is true, that his possible torture was the nephew of a former Tanzanian president. Justified that Nessie N.Z.C. and his in-laws have each threatened him that the government ties gave them the capacity to torture him. And that because of those same ties, the government will turn a blind eye to his torture if he goes back to Tanzania. And that appears, so he brought the issue to the fore. And we, on the waiver rule, an opinion of our court, Yen-Lang Wu, which is 393 F.3.418, says so long as an immigration petitioner makes some effort, however insufficient, to place the BIA on notice of a straightforward issue being raised on appeal, the petitioner is deemed to have exhausted her administrative remedies. I mean, it's a very low bar. Okay. All right. And I, I would still argue that it's completely, I mean, it's just, but accepting a low bar. Well, maybe, maybe what happens is he won't be able to corroborate. But at this point, all that Severia really requires, going back to Chuck Wu and going back to Abdoulaye, is give him the chance. He may not be able to succeed, but at least give him the chance. Tell him what you think is missing and give that person the opportunity to fill in the blanks. I agree that that's a rule. I just, this is what I think is mischaracterized here. If we're getting to the merits of it and saying that it's exhausted, petitioner characterizes it as a lack. But we're saying it's not waived, so if it's not waived, it's backdoor, it's not exhausted, it's exhausted. Right. So let's say that's the case. Petitioner mischaracterizes this as a lack of corroboration case, when in fact it's a burden of persuasion case. It's a case where the judge found it. Yes, she said that there were times that he didn't corroborate. But in the end, she said, even accepting those, those parts is true. I don't find that he persuaded that evidence is persuasive enough to show that the Tanzanian government is going to help. The way it would work is during the course of the hearing, it would say, you brought up certain evidence, but I think that evidence needs to be corroborated by however you want to do it. But this evidence, that evidence and this other evidence needs to be corroborated. Do you have that corroboration or do, in some cases, should we take a recess and allow you a time to come back another day with possible evidence? And I'm sorry, but the question there is that she should have done that. Or I mean, in some cases, how do you go about, in effect, following the mandate that's given to us in Severia? I believe that's I believe what you articulated is exactly right. That you put them on notice and then give them the opportunity to come back another day. But I don't think that that's the case here. Because? Because in the end, well, again, she cited certain spots that needed corroboration. In the end, there's two lines. I think the two main points of lack of corroboration is his, is Nzizi's relationship with his uncle, the former Tanzanian president, and the fact that these threats were made against him. And the IJ specifically says, however, the court notes for the record that even if the respondent has had threats against him, this doesn't mean the respondent is a candidate for protected protection against torture. And then with respect to the suggestion that ex-president would, even if he is related to Nzizi, do something awful to vindicate Nzizi is supported by nothing at all in the record. Other than some opining by this expert on Tanzania and the respondent's own opinions about that. This is not a, it's not a corroboration case. It's not a case, it's not a gotcha case like Saravia was. It's a case where the court found holes in the petitioner's case. But even accepting them as true, found that she wasn't persuaded that he had met his eligibility requirements for cat protection. And those are most of the cases we see. If we find this to be a lack of corroboration case, then we would find most of our cases to be lack of corroboration cases. You can always present more evidence and the IJ can always find parts of your claim to be weak. But those aren't lack of corroboration cases. I mean, the person who was a co-conspirator with him did leave the country, right? Yes. And the fear is that if he goes back, he will be harmed and the government will turn a blind eye. Now, the argument possibly against it is that his family has some political connections as well. But that doesn't need to be played out at a hearing. I believe it was played out at a hearing. He had the opportunity to present all of that evidence and he did. And the IJ did her job and looked at it and did not find that it... But in part, corroboration is a timing issue. That is, you don't wait until the time that you give the decision and say, gotcha, you should have corroborated X or Y. At the hearing, you need to say, I think you need to have some corroboration of this. Do you have that information or that evidence with you now? If you don't, then perhaps we should entertain the possibility of an adjournment for purposes of allowing you to attempt to get it. I think, yeah, and I think I agree with that. And I think the reason that this is distinguishable is that had he even presented evidence, this is not a gotcha case because she didn't... His claim didn't fail on him not having that evidence before her. Evidence of his relationship and evidence of the threats. Because in the end, she said, even if you did show that, even if I did find enough evidence of these threats and of this relationship, I still would not find you eligible. Are you making a harmless... Are you making a harmless ear argument on the failure to properly notify on the corroboration question? I am not. I think if the corroboration were determinative in this case, then there would have been error below. But since it was not, I don't believe that the immigration judge had any obligation to provide notice and opportunity. Since she didn't need corroboration or didn't find that accepted that evidence or those claims, given the evidence that was before her and went forward and made the decision, even finding... I think she took the places where she found lack of corroboration and said, even if I didn't find lack of corroboration, even if I find that you sufficiently corroborated these claims, I'm still not finding that you showed eligibility. And so since the corroboration wasn't determinative, I don't believe that there was any error below. Okay. Thank you very much. Thank you. Thank you. So I want to begin. We also think Kaplan is good law, so you don't have to worry about that, Your Honor. But the government's argument, the Attorney General's argument last month before this court in Bisardo Vale, actually contradicts the Attorney General's argument today that the first step of the NAA inquiry is a low threshold. Because as the court noticed in our motion that we filed to the court, the government actually says if the immigration judge is supposed to determine whether the crimes element can even raise the possibility of being a particularly serious crime. If it doesn't, then we're done. So this indicates that it's not a... This doesn't necessarily indicate that it's a low or... This doesn't necessarily indicate that it is a low threshold. It indicates that it's a serious threshold and that immigration judges are supposed to engage in a serious analysis because there is a potential that petitioners such as Luziga, who have facts that align with cases in this jurisdiction such as Kaplan... I think the point that... Or the problem that some of us are having is that a conviction under 1343 and 1349, it's hard to see how that would survive a claim that it's not a particularly serious crime. In your honor, the court... On remand, if we prevail here, the immigration judge does determine that 1349, based on the elements alone, does fall within the ambit of being a particularly serious crime. And then we raise it. And then we again raise that issue on a petition for review, which the Kaplan and other cases do say that is a legal determination that can be challenged under the act. Then I think that's the time for the court to make that determination of whether there is a material difference between 1343 or 13... Substance of wire fraud or conspiracy to commit wire fraud. But the truth of the matter is that analysis never happened at the immigration... Before the immigration judge. And I want to turn to the exhaustion point. And your honor picked up on it. The heart of Abdullahi and his progeny is that petitioners should have an opportunity to have... They should be put on notice to corroborate certain facts. And as well as have an opportunity to supply that corroboration or explain that corroboration. And he did sufficiently exhaust that by saying things such as that the board and immigration judge never gave them an opportunity to explain why certain evidence was available or not. And that goes to the heart of Abdullahi. And finally, we disagree with the attorney general that the immigration judge's decision was based on a burden of persuasion. Her decision clearly indicates that it was based on a lack of cooperation. Because she says things such as there is nothing to support this claim other than the opinions or rambling opinions of Luziga. There's nothing to support this claim other than testimony. So she clearly indicates that she received the testimony and even accepting it as true. She might have not... She might have reached the same conclusion. But however, Luziga should have the opportunity on remand to submit further evidence to show... To couple and supplement and support his own testimonial evidence. Thank you very much. Thank you. Can I ask a question? Sure. Go right ahead. Go ahead. Anderson, just a simple question. Yes. Have you finished your third year at Penn Law? Yes. About a month ago now. Okay. I commend you because we've had law school clinics in the past. And when the case was called post the end of the third semester, the students became unavailable. Yeah. So I commend you for staying. Oh, you're staying for the bar, right? Yes. Oh, who cares? This case will be on probably the bar. The point is, I think this is probably my third time or so that I've had a student from Penn argue, assisted most ably by the Deckert firm. And in each case, it's been uniformly excellent. And you are to be commended as you are, Mr. Archie, for the work that you do. It is a pleasure to have you here. And I hope this program continues. I got my start before the D.C. Circuit when I was 25. And that's what made me want to become a federal judge. It's as good as it gets when we have people like you appearing before us. Thank you so much. Thank you to both counsels. I concur. Thank you, Your Honor.